UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

    – against –

CHARLES CARNEGLIA,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MEMORANDUM & ORDER
ADMISSION OF STATEMENTS
OF MURDER VICTIM

08-CR-76

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 0 6 2009 ★

BROOKLYN OFFICE

JACK B. WEINSTEIN, Senior United States District Judge:

# Contents

I. Introduction ............................................................................................................................2
II. Facts.....................................................................................................................................2
   A. Out-of-Court Statements...................................................................................................2
   B. In-Court Testimony at State Court Proceeding .................................................................4
III. Law......................................................................................................................................5
   A. Rule 802............................................................................................................................5
   B. Rule 804(b)(6) ...................................................................................................................5
   C. Rule 804(b)(1) ...................................................................................................................6
   D. Rule 403.............................................................................................................................8
IV. Application of Law to Facts ...............................................................................................9
   A. Out-of-Court Statements...................................................................................................9
      1. Rule 804(b)(6) .............................................................................................................9
      2. Rule 403........................................................................................................................9
   B. In-Court Testimony at State Court Proceeding ...............................................................12
      1. Rule 804(b)(1)............................................................................................................12
      2. Rule 804(b)(6) ...........................................................................................................15
      3. Rules 401-403 ............................................................................................................15
V. Conclusion..........................................................................................................................16
VI. Appendix A: 1975 State Court Transcript of Albert Gelb's Testimony...........................17



I. **Introduction**

As part of a RICO prosecution, defendant is charged with conspiring to murder and murdering Albert Gelb, who was shot and killed on March 11, 1976, more than thirty years ago. The government offered statements made by Gelb prior to his death through: (1) testimony by two friends of Gelb who heard what he said outside of court; and (2) Gelb's testimony at a February 10, 1975 state court preliminary hearing on criminal charges stemming from a physical confrontation between Gelb and the defendant. *See* Gov't *Mastrangelo* Mot. at 3, Feb. 3, 2009, Docket Entry ("D.E.") No. 1798; Gov't Mem. Law Supp. Mot. Limine ("Gov't Mem."), Jan. 14, 2009, D.E. No. 1716. Defendant objected. *See* Trial Tr. 1016-19, Feb. 4, 2009; Mem. Law Opp'n Gov't Mot. ("Def. Mem. Opp'n"), Jan. 16, 2009, D.E. No. 1729.

For the reasons stated below, witnesses were permitted to testify to out-of-court statements made by Gelb. *See* Trial Tr. 1014-19, Feb. 4, 2009; Trial Tr. 1374-87, Feb. 5, 2009. Also admitted was Gelb's testimony from the state court preliminary hearing of February 10, 1975. *See* Trial Tr. 1427-28, Feb. 5, 2009; Hr'g Tr. 3-28, Jan. 20, 2009. The law allows the victim to rise from the grave, confronting his murderer in court with incorporeal testimony, preventing the criminal from frustrating justice through his wrongdoing.

II. **Facts**

   A. **Out-of-Court Statements**

Lynn Fantauzzi, a close friend of Gelb, was with him at the Esquire Diner in Queens, New York when the defendant and Gelb had an altercation. Gelb, a New York State court officer, had observed a gun tucked into the defendant's belt when the defendant, who had been seated near Gelb, rose. Fantauzzi's proposed testimony was:

> On February 10, 1975, Gelb told the friend [Fantauzzi] who accompanied him to the Esquire Diner that: (1) he was going to ask

2

the defendant if he had a permit for his gun and shortly return, (2) he learned after the arrest of the defendant's criminal history, and (3) he attempted to speak to the defendant prior [to] the defendant's arraignment, at which time the defendant threatened to kill Gelb for embarrassing him, telling Gelb that he was "a dead man."

In the 13 months between Gelb's arrest of the defendant and Gelb's murder, Gelb informed this same friend that (1) Gelb received numerous telephone calls from the defendant threatening him with death, the frequency of which escalated as the defendant's trial approached, (2) Gelb believed that he would be killed by the defendant and his associates prior to the trial, and (3) Gelb would not go to the police or attempt to flee because he said that the defendant and his associates would simply find him or hurt someone close to him.

Gov't *Mastrangelo* Mot. at 3.

Gerald Beyrer was a court officer who worked alongside Gelb. His prospective testimony of Gelb's statements relating to a request for special parking arrangements at the courthouse was summarized as follows:

> Prior to his murder, Gelb asked a fellow court officer [Beyrer] who worked at the Queens County Supreme Court to see if he could arrange for Gelb to receive a parking spot outside the courthouse when he testified at the trial of the man he arrested in the diner. Gelb stated that he wanted to be close to the courthouse to avoid any problems. He said that the last time he went to court on that case, the defendant's family threatened him outside the courthouse, telling Gelb that he was a court officer, not a cop, and that he should shut his mouth. The fellow court officer arranged for Gelb to receive a parking spot as requested.

*Id.* The government argued that this testimony demonstrated Gelb's ongoing concerns about threats made against him by the defendant. *See id.* at 2-3.

Beyrer could also testify that Gelb told him that he had been threatened by the defendant's mob associates. A police report memorialized Beyrer's statement to law enforcement shortly after Gelb's murder:

3

> Around the Christmas holidays the deceased [Gelb] came and visited [Beyrer] at the court and told him that the fellows who were with the fellow who was arrested threaten[ed] him outside of court. The deceased didn't give [any] further details about the incident other than to say that they told him he wasn't a Policeman but a [Court] Officer and should forget the incident.
>
> Three weeks [before the murder] the deceased visited [Beyrer] again at the court at which time he asked about the threats. He said that thing[s] were dying down and that he wasn't having a problem at this time.

Gov't Ex. 3500-GB-1, ¶¶ 2-3.

### B. In-Court Testimony at State Court Proceeding

State court records reveal that in the early morning of February 10, 1975, the defendant and Gelb were involved in a physical conflict at a diner in Queens. Observing the defendant carrying a gun, Gelb confronted him, inquiring whether he was a law enforcement officer. When Gelb attempted to arrest the defendant, a struggle ensued. Following the arrival of police, Gelb arrested the defendant, who was charged with illegal gun possession and resisting arrest.

Later the same day, at a preliminary hearing before a Queens Criminal Court judge, Gelb gave sworn testimony about the altercation. *See* Preliminary Hr'g Tr., Feb. 10, 1975, attached as Appendix A. Gelb was questioned by the Assistant District Attorney and cross-examined by William Erlbaum, a well-known and experienced attorney, who had been retained as counsel for the defendant. The proceeding was transcribed by an official court reporter. On March 11, 1976, four days before Gelb was to testify at defendant's trial for illegal gun possession and resisting arrest, Gelb was shot and killed.

Based on overwhelming evidence, this court found by a preponderance that the defendant murdered Gelb to prevent his testifying at the state trial. The defendant's ploy worked. On appeal, his conviction was reversed based on what were considered erroneous jury instructions in

view of evidence "that Gelb may have mistakenly ascribed to defendant a personal and disparaging remark which in fact was uttered by a third party, and that Gelb, overreacting to the remark, unjustifiably accosted the defendant." *People v. Carneglia*, 405 N.Y.S. 2d 298, 299 (N.Y. App. Div. 1978).

## III. Law

### A. Rule 802

An "out-of-court statement [is] generally inadmissible when . . . offered to prove the truth of its contents." *Rosenfeld v. Basquiat*, 78 F.3d 84, 89 (2d Cir. 1996); *see also* Fed. R. Evid. 802. In precluding hearsay, Rule 802 "seeks to eliminate the danger that evidence will lack reliability because faults in the perception, memory, or narration of the declarant will not be exposed." 5 Margaret A. Berger et al., *Federal Evidence* § 802.02[3] (Gen. ed. Joseph M. McLaughlin) (Rev. ed. 2008). Rule 802 is "shaped by its exceptions" explicated elsewhere in the Federal Rules of Evidence. *Id.* at § 802.02[1][a].

### B. Rule 804(b)(6)

Statements of an unavailable declarant are not excluded as hearsay when offered against a party who "has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6). This exception applies both to out-of-court statements and to in-court testimony. *See id.* The Court of Appeals for the Second Circuit has noted that:

> . . . the district court may admit hearsay evidence as to statements by an unavailable declarant if it finds by a preponderance of the evidence that (a) the 'party against whom the out-of-court statement is offered[] was involved in, or responsible for, procuring the unavailability of the declarant through knowledge, complicity, planning or in any other way,' and (b) that party 'acted with the intent of procuring the declarant's unavailability as an actual or potential witness.'

5

*United States v. Stewart*, 485 F.3d 666, 670-71 (2d Cir. 2007) (quoting *United States v. Dhinsa*, 243 F.3d 635, 653-54 (2d Cir. 2001) (citation omitted)). *See also United States v. Mastrangelo*, 693 F.2d 269, 273 (2d Cir. 1982) (establishing a preponderance of the evidence standard for the court's determination of whether the defendant forfeited confrontation clause rights to hearsay statements by causing the declarant's unavailability).

This prophylactic rule deals with deliberate and wrongful behavior "which strikes at the heart of justice itself." *Mastrangelo*, 793 F.2d at 273. *See also id.* at 272-73 ("Where a defendant has silenced a witness through . . . murder, admission of the victim's prior statements at least partially offsets the perpetrator's rewards for his misconduct"); *United States v. Cherry*, 217 F.3d 811, 815 (10th Cir. 2000) ("To permit the defendant to profit from such conduct would be contrary to public policy, common sense and the underlying purpose of the confrontation clause.").

Where a party has intentionally procured a declarant's unavailability as a witness, Rule 804(b)(6) allows the declarant's hearsay statements to be offered against that party at future proceedings. "A defendant who wrongfully and intentionally renders a declarant unavailable as a witness in any proceeding forfeits the right to exclude, on hearsay grounds, the declarant's statements at . . . *any subsequent proceeding.*" *Stewart*, 485 F.3d at 672 (quotation and citation omitted) (emphasis added).

### C. Rule 804(b)(1)

Rule 804(b)(1) permits cross-examined, sworn testimony of an unavailable witness to be admitted as an exception to the hearsay rule. *See* Fed. R. Evid. 804(b)(1). Where a declarant is unavailable as a witness, the declarant's "[t]estimony given . . . at . . . a different proceeding [shall not be excluded as hearsay] if the party against whom the testimony is now offered . . . had

an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." *Id.*

Former testimony will not be excluded as hearsay when: (1) the declarant is now unavailable; (2) it was given at a formal legal proceeding; (3) at the time it was given the party against whom it is now offered had the opportunity to adequately develop it by direct, cross, or redirect examination; and (4) at the time it was given the party against whom it is now offered had a similar motive to develop it. *See id.*

A declarant is unavailable to testify when he is "unable to be present . . . at the hearing because of death." Fed. R. Evid. 804(a)(4). Testimony given at a state preliminary criminal hearing under oath or affirmation with a verbatim transcription meets the Rule 804(b)(1) requirement that the former testimony was given at a formal proceeding. *See United States v. Salerno*, 937 F.2d 797, 805 (2d Cir. 1991), *vacated on other grounds sub nom. United States v. DiNapoli*, 8 F.3d 909 (2d Cir. 1993).

The requirement that the party had an opportunity to develop it "is generally satisfied when the defense [was] given a full and fair opportunity to probe and expose [the] infirmities [of the testimony] through cross-examination." *United States v. Salim*, 855 F.2d 944, 954 (2d Cir. 1988) (quotation and citation omitted).

A motive to develop testimony is "sufficiently similar" for purposes of Rule 804(b)(1) when the party now opposing the testimony would have had, at the time the testimony was given, "an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue" now before the court. *DiNapoli*, 8 F.3d at 914-15. "The nature of the two proceedings . . . and, to a lesser extent, the cross-examination at the prior proceeding . . . [are] relevant though not conclusive on the ultimate issue of similarity of motive." *Id.* at 915.

The rigor of a preliminary hearing's cross-examination may support a finding of a "sufficiently similar" motive to what one would expect at a subsequent criminal trial.

Similarity of motive does not imply that the charges facing the defendant at the prior and current proceedings must be identical. "Where . . . both cases involve[] serious felonies with substantial potential punishments, and the conduct to be proven by the prior testimony in the first trial is identical to that to be proven by the testimony in the second trial, a defendant's motive [is] sufficiently similar to justify admission." *United States v. Taveras*, No. 04-156, 2006 WL 1875339, at *16 (E.D.N.Y. July 5, 2006).

### D. Rule 403

Hearsay statements that fall under one or more hearsay exceptions are not automatically admitted. "[A]fter the district court finds by a preponderance of the evidence that the hearsay statement is admissible under Fed. R. Evid. 804(b)(6), it must still perform the balancing test required under Fed. R. Evid. 403." *Dhinsa*, 243 F.3d at 655. The "fact that prior testimony meets the criteria set by [Rule 804(b)(1)] and hence is not excludable on the ground that it is hearsay . . . does not make it admissible." *Li v. Canarozzi*, 142 F.3d 83, 88 (2d Cir. 1998). Based on other evidentiary rules, the trial court retains discretion to exclude admissible hearsay evidence. *Id.*

Under Rule 403, the court may exclude evidence that has "probative value . . . substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Evidence presents a danger of unfair prejudice when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence," such as "prov[ing] some adverse fact not properly in

issue or unfairly . . . excit[ing] emotions against the defendant." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (citations omitted). Rule 403 requires the court to assess the "probative value of the proffered item as well as the harmful consequences that might flow from its admission." 5 Berger, et al., *Federal Evidence* § 403.02[1]. "Relevant evidence may be excluded if its probative value is not worth the problems that its admission may cause." *Id.*

## IV. Application of Law to Facts

### A. Out-of-Court Statements

#### 1. Rule 804(b)(6)

By a preponderance of the evidence, based on hearings held outside the presence of the jury as well as evidence already introduced at trial, this court found that, for purposes of determining the admissibility of Gelb's hearsay statements under Rule 804(b)(6), "the defendant killed Gelb . . . in order to prevent him from testifying in the then forthcoming [state] trial and in any . . . proceeding in the future." Trial Tr. 1014, Feb. 4, 2009. The defendant has therefore "forfeit[ed] the right to object on hearsay grounds to the admission of [the] declarant's prior statement [because the defendant's] deliberate wrongdoing . . . procured the unavailability of the declarant as a witness." *United States v. Williams*, 443 F.3d 35, 46 (2d Cir. 2006) (quotation and citation omitted). Gelb's out-of-court descriptions of what he had observed – made directly to Fantauzzi and Beyrer – are admissible hearsay, subject to other applicable evidentiary limitations.

#### 2. Rule 403

Despite the general admissibility of Gelb's statements made to Fantauzzi and Beyrer, exclusion was warranted for portions of their respective testimony that otherwise constitute inadmissible hearsay or are inadmissible under Rule 403.

9

Fantauzzi's testimony regarding what happened to Gelb following his arrest of the defendant was restricted to what she herself observed and what Gelb himself told her directly. *See* Fed. R. Evid. 802; Trial Tr. 1378-87, Feb. 5, 2009. She was permitted to testify about Gelb's statements informing her that he had received threatening phone calls from the defendant. *See* Trial Tr. 1378-81, Feb. 5, 2009. Since prospective testimony that was derived from what she heard from those other than Gelb constituted inadmissible hearsay, she was not permitted to report what other individuals, such as Gelb's roommate, told her. *See* Fed. R. Evid. 802; Trial Tr. 1373-87, Feb. 5, 2009.

On direct examination, Fantauzzi testified to specific statements Gelb had made to her about the threats he was receiving from the defendant and the defendant's mob associates. They were admitted under Rule 804(b)(6) because Gelb himself could not testify to the threats, having been killed by the defendant to prevent his testimony:

> Q [Mr. Burlingame, for the government]: What, if anything, happened . . . to Gelb related to the incident at the diner?
> 
> . . .
> 
> A [Ms. Fantauzzi, the witness]: Once I was at [Gelb]'s apartment with my husband, and his roommate was there, and they had a phone call, and it turned out to be some of the -- either one of or two of the people that were --
> 
> . . .
> 
> The Court: What did you hear?
> A: That the individual who had been at the diner that night was on the phone threatening him, his life, again.
> The Court: Did you hear the person threaten?
> The Witness: No. I did grab the phone, though, and yelled at them to leave him alone, and I hung up on them.
> 
> . . .
> 
> Q: Did you have conversations with Gelb during that period about telephone calls he was receiving?
> A: Numerous.
> Q: Did he say that he was receiving telephone calls from Charles Carneglia, the man at the diner that night?
> A: Numerous calls.
> 
> . . .

10

> Q: Did Albert Gelb tell you that he was receiving telephone calls from the defendant?
> A: Yes, he did....
>
> ...
>
> Q: What did Gelb tell you was the content of those calls?
> A: That they were telling him -- he was being told by this individual that they would be killing him, they were going to remove him.
> Q: When you say "this individual," you are talking about Charles Carneglia?
> A: Yes.
> Q: So, your testimony is that Gelb was receiving phone calls from Charles Carneglia saying that they were going to kill him?
> A: Yes.
>
> ...
>
> Q: As the trial date approached, what, if anything, did Gelb tell you about the death threats he was receiving from Charles Carneglia?
> A: They were increasing. They were more frequent.
> Q: Did Gelb tell you or did you observe how he responded when he would receive these calls?
> A: He told me that he tried to reason with the individual, and at this point in his life, he was studying with Jehovah's Witnesses, and he was trying to encourage this man to look into the scriptures himself.
> Q: You said you were present when he received one of these calls?
> A: Yes, I was.
> Q: Can you explain -- can you tell us about that incident?
> A: I don't remember everything about it, but I know he was on the phone again. I know that Al was trying to talk with him in a calm voice, and I know I got angry and yelled at them.

Trial Tr. 1378-81, Feb. 5, 2009. Beyrer was permitted to testify that Gelb "came and visited [him] at the court and told [him] that the fellows who were with ... [Carneglia] threatened [Gelb] outside of court." *Id.* at 1461.

Testimony by Beyrer as to Gelb's request for a special parking arrangement "close to the courthouse to avoid any problems" was excluded under Rule 403. *See id.* at 1456-58. The testimony would have invited the jury to draw the somewhat dubious inference that the request was a result of threats made by this defendant and his mob associates. Introduction of this

testimony, with its limited probative value, would tend to confuse and mislead the jurors and cause waste of time in the course of the jury's deliberations on the already sprawling evidence presented at trial. *See* Fed. R. Evid. 403.

### B. In-Court Testimony at State Court Proceeding

#### 1. Rule 804(b)(1)

Gelb's testimony from the February 10, 1975 preliminary hearing meets the requirements of the Rule 804(b)(1) "former testimony" hearsay exception. It is admissible, subject to other evidentiary limitations. Gelb was unable to testify at the trial because of his death. *See* Fed. R. Evid. 804(a)(4). The testimony was given at a hearing under oath and transcribed by an official court reporter. *See* Appendix A. For purposes of Rule 804(b)(1), his state in-court statements constitute "testimony given as a witness at . . . a different proceeding".

The defendant urged that the lower burden of proof applied at the state preliminary hearing, as compared to the burden at the instant trial, weighed against a finding of "similar motive" for purposes of Rule 804(b)(1). *See* Def. Mem. Opp'n at 2. The argument is unpersuasive. The relative burden of proof did not bear on the motive of, or on the opportunity afforded to and taken by defense counsel. The February 10, 1975 state preliminary hearing was conducted under rules and procedures only slightly different from those governing the current federal criminal trial. They did not hobble defense counsel.

It was defendant's submission that his current counsel would have had a greater incentive to discredit Gelb's testimony through more rigorous cross-examination in the present trial than defendant's then-counsel had in 1975. Unconvincing is the argument that defendant had a lesser motive in conducting cross-examination in 1975 because the charges he then faced were "far less serious" than those which now confront him. *See* Def. Mem. Opp'n at 2. There is no support for

12

"basing a decision to exclude prior testimony on the grounds that the penalty faced by the defendant was greater in the second proceeding than in the first." *Taveras*, 2006 WL 1875339, at *16. In both 1975 and 2009, the defendant was charged with "serious felonies with substantial potential punishments." *Id.*

Under Rule 804(b)(1), "'similar motive' does not mean 'identical motive.'" *Salerno*, 505 U.S. at 326 (Blackmun, J., concurring). Determining whether a motive is sufficiently similar is a "factual inquiry, depending in part on the similarity of the underlying issues and on the context." *Id.*

Defense counsel was under no obligation to cross-examine Gelb at the state preliminary hearing, which occurred at the time of arraignment. The decision to cross-examine was tactical: questioning a witness at a preliminary hearing potentially "locks" the witness into particular testimony prior to that witness's opportunity to more fully prepare with the assistance of prosecutors. The decision to cross-examine a prosecution witness at a preliminary hearing is generally made only when defense counsel is prepared, because a witness at a preliminary hearing may later be unavailable to testify at trial, making the preliminary hearing testimony admissible and highly consequential to the defendant's case. In conducting a cross-examination at a preliminary hearing, defense counsel thus has reason and motive to question an adverse witness comprehensively.

There does not appear to have been any reason, such as a trap to be sprung by surprise at trial, that would cause counsel at the 1975 hearing to hold back an unrestrained attack. Gelb's credibility was subject to reattack at the instant trial. *See* Fed. R. Evid. 806 (attacking or supporting credibility of declarant).

It is instructive to compare testimony from the preliminary hearing at which Gelb was a witness, which went to the merits of the case, to testimony given at a proceeding which does not address a defendant's culpability. At a suppression hearing, for example, a defendant does not have a motive to comprehensively cross-examine witnesses in order to cast doubt upon the defendant's guilt. *See United States v. Gomes*, 387 F.3d 157, 161 (2d Cir. 2004) ("Because the primary issue at [defendant's] suppression hearing was [an issue other than the defendant's guilt or innocence], [defendant] may have lacked the motive to cross-examine . . . witnesses as to facts primarily relevant to his guilt or innocence."); *Wingate*, 520 F.2d at 316 ("The issue at the suppression hearing . . . was not whether [the defendant] was guilty or innocent . . . . [There was] therefore . . . no meaningful opportunity to cross-examine [the witness]."). At the 1975 preliminary hearing, held on the date of arraignment, the focus was squarely on the defendant's involvement and culpability. When cross-examining at such a hearing, defense counsel has a motive to probe deeply into all issues bearing on the defendant's guilt.

A review of the content of the 1975 testimony demonstrates the rigor of the cross-examination. Defense counsel sought to develop in a way unfavorable to Gelb several aspects of the incident related to the crimes charged. *See* Appendix A 5-27. Gelb was pressed for precise details on critical features of the encounter, setting the stage for later impeachment. *See, e.g., id.* at 7-8. Skilled defense counsel elicited responses from Gelb that cast a favorable light on the defendant's behavior:

> Q. When this Defendant you say struggled with you in the bathroom and there came a time you say you were temporarily out of possession of your gun, is that right?
> A. Yes.
> Q. He never threatened you with your gun did he, sir?
> A. No.
> Q. In words or in substance, is that right, sir?
> A. Right.

14

> Q. And just for clarification it was you who pulled your gun on him, is that correct, sir?
> A. Yes.

*Id.* at 40.

The cross-examination succeeded in identifying several limitations of Gelb's testimony. Gelb, for example, admitted that he was unsure whether the defendant's gun was loaded. *Id.* at 25. The transcript makes evident that the defendant was given a full and fair opportunity to probe and expose infirmities of Gelb's testimony. *See Salim*, 855 F.2d at 954.

When cross-examining Gelb on February 10, 1975, the defendant had a substantial interest in challenging the veracity of Gelb's version of the altercation and ensuing arrest. *DiNapoli*, 8 F.3d at 914-15. All requirements of Rule 804(b)(1) were met.

### 2. Rule 804(b)(6)

Gelb's testimony was admitted under Rule 804(b)(1). *See* Trial Tr. 1430-53, Feb. 5, 2009. At the time of admission, the court had already found by a preponderance of the evidence that the defendant killed Gelb to prevent him from testifying against him. *See* Part IV.A.1, *supra*. Rule 804(b)(6) would thus also support the court's determination that Gelb's testimony was admissible. *Id.*

### 3. Rules 401-403

No exclusion of portions of Gelb's testimony as irrelevant or prejudicial was warranted. *See* Fed. R. Evid. 401, 402, 403. The complete transcript was admitted except for colloquy among court and counsel. *See* Trial Tr. 1427-28, Feb. 5, 2009; Hr'g Tr. 3-28, Jan. 20, 2009; Appendix A.

## V. Conclusion

Gelb's statements to Lynn Fantauzzi and Gerald Beyrer were admissible with minor limitations. *See* Part IV, *supra*. The February 10, 1975 state court testimony of Gelb was properly admitted and read to the jury.

SO ORDERED.

/s/ Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Dated: March 5, 2009
       Brooklyn, New York

**VI. Appendix A: 1975 State Court Transcript of Albert Gelb's Testimony**