FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ OCT 20 2009 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

CHARLES CARNEGLIA,

Defendant.

08-CR-76

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

**JACK B. WEINSTEIN, Senior United States District Judge:**

Under 18 U.S.C. § 3553(c), a sentencing court is required to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If, however, the sentence is not of the kind or is outside the range of the sentencing guidelines as referred to in section 3553(a)(4), the court is required to state the specific reasons for imposing a sentence different from the guidelines. 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in the written order of judgment and commitment." Id. Even though the mandatory nature of the guidelines has been excised and they are now "advisory," see United States v. Booker, 543 U.S. 220, 245-46 (2005), the sentencing court must still adhere to the requirements set forth in 18 U.S.C. § 3553(c)(2). United States v. Jones, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons need only be "a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." United States v. Rattoballi, 452 F.3d 127, 138 (2d Cir. 2006). Such a statement should demonstrate that the court "considered the parties' arguments and that it has a reasoned basis for exercising its own legal decisionmaking authority." United States v. Cavera, 550 F.3d 180, 193 (2d Cir. 2008) (2d Cir. 2008) (quoting Rita v. United States, 127 S.Ct. 2456, 2468 (2007)) (internal quotations and alterations omitted). Although a written statement of

1

reasons pursuant to 18 U.S.C. § 3553(c)(2) is not necessary when the court imposes a guidelines sentence, the statement may nevertheless assist the reviewing court and the United States Sentencing Commission in understanding the reasons for the court's sentence.

On March 17, 2009, Charles Carneglia was found guilty by jury verdict of counts one and two of a four-count thirteenth superseding indictment which charged that between February 1975 and February 2008, the defendant, together with others, being a person employed by and associated with the Gambino Family, an enterprise that engaged in, and the activities of which affected interstate commerce, conspired to violate 18 U.S.C. § 1962(c), and to conduct the affairs of the enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1). Within count one, Carneglia was convicted of racketeering acts two, three, four, five (A) and (B), six (A), (B) and (C), seven (A), (B) and (C), eight (A) and (B), ten, eleven (A) and (B), twelve (A) and (B) and thirteen (A) and (B).

Racketeering act two charged that on November 6, 1977, the defendant caused the death of Michael Cotillo in violation of New York Penal Law Sections 125.25(1) and 20.00.

Racketeering act three charged that on July 29, 1983, the defendant caused the death of Salvatore Puma, in violation of New York Penal Law Sections 125.25(1) and 20.00.

Racketeering act four charged that between June 1988 and December 1990, the defendant, together with others, conspired to distribute and possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

Racketeering count five(A) charged that between September 1, 1990, and October 2, 1990, the defendant, together with others, conspired to cause the death of Louis DiBono, in violation of New York Penal Law Sections 125.25(1) and 105.15. Act five(B) charged that on October 2, 1990, the defendant, together with others, caused the death of Louis DiBono, in violation of New York Penal Law Sections 125.25(1) and 20.00.

Racketeering act six(A) charged that between January 1, 1990, and December 14, 1990, the defendant, together with others, conspired to forcibly steal U.S. currency from one or more employees of an armored car company, while aided by another person actually present, in violation of New York Penal Law Sections 160.10(1) and 105.10. Act six(B) charged that on December 14, 1990, the defendant, together with others, forcibly stole U.S. currency from one or more employees of an armored car company, in violation of New York Penal Law Sections 160.05 and 20.00. Act six(C) charged that on December 14, 1990, the defendant, together with others, robbed one or more employees of an armored car company and, in the course of and in furtherance of such a crime, caused the death of Jose Delgado Rivera, in violation of New York Penal Law Sections 125.25(3) and 20.00.

Racketeering act seven(A) charged that between January 1991 and May 2005, the defendant, together with others, conspired to extort money from Hunter Adams, with the consent of Adams, and that the consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of 18 U.S.C. § 1951(a). Act seven(B) charged that between January 1991 and May 2005, the defendant, together with others, extorted money from Adams, with Adams' consent, which was induced through wrongful use of actual and threatened force, violence, and fear, in violation of 18 U.S.C. § 1951(a). Act seven(C) charged that between January 1991 and May 2005, the defendant, together with others, stole money from Adams by extortion, by compelling and inducing him to deliver such property to the defendant and others by instilling in him a fear that if the property was not so delivered, the defendant and others would: (1) cause physical injury to Adams in the future; (2) cause damage to Adams' property; and (3) perform an act which would not itself materially benefit the defendant, but which was calculated to harm Adams materially with respect to his health, safety, business, calling, career,

financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(I), 155.02(2)(e)(ii), 155.02(e)(ix) and 20.00.

Racketeering act eight(A) charged that between January 1991 and December 1994, the defendant, together with others, conspired to use extortionate means to collect an extension of credit from Peter Zuccaro, in violation of 18 U.S.C. § 894(a)(1). Act eight(B) charged that between January 1993 and December 1994, the defendant, together with others, participated in the use of extortionate means to collect an extension of credit from Zuccaro, in violation of 18 U.S.C. § 894(a)(1).

Racketeering act ten charged that between January 1995 and December 1996, the defendant, together with others, conspired to use and employ manipulative and deceptive devices and contrivances, directly and indirectly, in violation of Rule 10b-5 of the Rules and Regulations of the Securities Exchange Commission, to engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon the investing public, in connection with purchases and sales of certain securities, and by use of means and instrumentalities of interstate commerce and the mails, in violation of 15 U.S.C. §§ 78j(b) and 78ff, all in violation of 18 U.S.C. § 371.

Racketeering act eleven(A) charged that between January 1993 and December 1994, the defendant, together with others, conspired to abduct one or more persons, including David D'Arpino, in violation of New York Penal Law Sections 135.20 and 105.10. Act eleven(B) charged that between January 1993 and December 1994, the defendant, together with others, abducted one or more persons, including D'Arpino, in violation of New York Penal Law Sections 135.20 and 20.00.

Racketeering act twelve(A) charged that between August 1, 1995, and September 5, 1995, the defendant, together with others, conspired to steal U.S. currency from one or more

4

employees of the Sears Department Store, while aided by another person actually present, in violation of New York Penal Law Sections 160.10(1) and 105.10. Act twelve(B) charged that on September 5, 1995, the defendant, together with others, stole U.S. currency from an employee of the Sears Department Store, in violation of New York Penal Law Sections 160.05 and 20.00.

Racketeering Act thirteen(A) charged that between October 1, 1995, and November 5, 1995, the defendant, together with others, conspired to steal U.S. currency from one or more employees of the Papavero Funeral home, while aided by another person actually present, in violation of New York Penal Law Sections 160.10(1) and 105.10. Act thirteen (B) charged that on November 5, 1995, the defendant, along with others, stole U.S. currency from an employee of the Papavero Funeral Home, violation of New York Penal Law Sections 160.05 and 20.00.

Count two charges that between January 1991 and May 2005, the defendant, together with others, conspired to commit extortion, and that he and his coconspirators agreed to obtain money from Hunter Adams, through wrongful use of actual and threatened force, in violation of 18 U.S.C. § 1951(a).

Carneglia was sentenced on September 17, 2009. The proceeding was videotaped in order to develop an accurate record of the courtroom atmosphere during sentencing and the various in-court factors and considerations that a district court must evaluate in imposing a sentence under 18 U.S.C. § 3553(a). See In re Sentencing, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (utility on appeal).

At sentencing, the court found the total offense level to be forty seven and defendant's criminal history category to be five, yielding a guidelines range of life imprisonment. Charge one carried a maximum term of imprisonment of life imprisonment, since the violation was based on racketeering activities for which the maximum term is life imprisonment. 18 U.S.C. §

1963(a). Charge two carried a maximum term of imprisonment of twenty years. Id. The fine range under the guidelines was $25,000 to 250,000 for each count.

Carneglia was sentenced to life imprisonment for count one and twenty years for count two, to run concurrently. He was sentenced to five years supervised release for count one and three years supervised release for count two, concurrently. A $200 special assessment was imposed. A $250,000 fine was imposed for each count consecutively, in view of the defendant's long criminal history suggesting that he may have assets that were not discovered by the government.

Respectful consideration was given to the sentencing guidelines, the Sentencing Commission's policy statements and all other factors listed under 18 U.S.C. § 3553(a) to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). A sentence within the guidelines range is appropriate in this case. See 18 U.S.C. § 3553(a)(4)(A).

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." See 18 U.S.C. § 3553(a)(1). The defendant was convicted of serious crimes over a twenty-plus year period. The crimes he committed were serious, involving murder and other acts of violence. His criminal history is long, and there is considerable evidence that he was involved in other serious crimes. He has not shown remorse. A sentence of life imprisonment reflects the seriousness of the offense, will promote respect for the law and provide just punishment. See 18 U.S.C. § 3553(a)(2)(A).

Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence. General deterrence is satisfied with the sentence imposed. The sentence will send a clear message that any involvement in organized crime will result in a substantial prison

sentence. Specific deterrence is achieved through incapacitation in view of the defendant's vicious and continued criminal conduct.

/s/ Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Dated: October 15, 2009
Brooklyn, New York