```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - X
3
     UNITED STATES OF AMERICA,    :   08-CR-76(JBW)
4                                 :
                                  :   U.S. Courthouse
5                                 :   Brooklyn, New York
          -against-              :
6                                 :   TRANSCRIPT OF
                                  :   MOTION
7                                 :
                                  :
8     CHARLES CARNEGLIA,          :   November 9, 2009
                                  :   11:00 a.m.
9              Defendant.         :
                                  :
10    - - - - - - - - - - - - - X

11   BEFORE:
                    HONORABLE JACK B. WEINSTEIN, U.S.D.J.
12
     APPEARANCES:
13
     For the Government:       BENTON J. CAMPBELL, ESQ.
14                             United States Attorney
                               271 Cadman Plaza East
15                             Brooklyn, New York 11201
                               BY:  EVAN NORRIS, ESQ.
16                                  ROGER BURLINGAME, ESQ.
                                    Assistant U.S. Attorneys
17

18
     For the Defendant:        KELLY SHARKEY, ESQ.
19

20

21

22   Court Reporter:        Holly Driscoll, CSR
                            Official Court Reporter
23                          225 Cadman Plaza East
                            Brooklyn, New York 11201
24                          (718) 613-2274

25   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Assisted Transcript.
```

1          THE CLERK:  Criminal cause for motion, USA versus

2   Charles Carneglia.

3          Counsel, note your appearances please, for the

4   United States.

5          MR. NORRIS:  For the government Evan Norris and

6   Roger Burlingame.  Good morning, Your Honor.

7          MS. SHARKEY:  Good morning, Judge, Kelly Sharkey for

8   Mr. Carneglia.

9          THE COURT:  All right.  Mr. Carneglia isn't here

10  because this is a legal argument.

11         MS. SHARKEY:  He's on the phone.

12         THE CLERK:  But he's on the phone.

13         THE COURT:  But he's on the phone.

14         MS. SHARKEY:  Yes.

15         THE COURT:  All right.

16         Are you here on the phone, Mr. Carneglia?

17         THE DEFENDANT:  Yes, Judge, I could hear you.

18         THE COURT:  Okay.  Good.  How are you feeling today?

19         THE DEFENDANT:  The same as always.

20         THE COURT:  Is that good or bad?

21         THE DEFENDANT:  All right.

22         THE COURT:  I'll hear your lawyer.

23         THE DEFENDANT:  Okay.

24         MS. SHARKEY:  Judge, the defense had previously

25  filed and the court had ruled on a Rule 29 and a Rule 33

1    motion.  Part of the bases of those motions had been
2    Mr. Carneglia's claim that he had not been able to review all
3    of the 3500 material prior to the case proceeding to trial.
4    I'm not seeking to relitigate those motions at this juncture
5    but subsequent to the court's ruling on those motions the
6    defense requested that Mr. Carneglia be allowed to have a copy
7    at his disposal of the 3500 material to review in aid of his
8    direct appeal.
9              THE COURT:  Well, has a notice of appeal been filed?
10             MS. SHARKEY:  Yes.
11             THE COURT:  Why don't you apply to the appellate
12   court?
13             MS. SHARKEY:  We thought it was better to apply to
14   the court as it had still been pending in this part.  The
15   record has subsequently been transferred to the Court of
16   Appeals.
17             THE COURT:  I don't know.
18             MS. SHARKEY:  It has been.
19             THE COURT:  Generally the Court of Appeals has
20   jurisdiction.
21             MS. SHARKEY:  We also believe that the court has
22   jurisdiction to entertain the application and would ask you to
23   do so.  Recently, in response to our request, Mr. Norris filed
24   a letter dated November 2nd opposing our request and noting
25   that the defendant had in December of '08 stipulated that the

1    3500 material would not be given to him in the MDC or any jail

2    facility.

3          THE COURT:  May I ask are you representing him on

4    the appeal?

5          MS. SHARKEY:  Right now, Judge, I think Mr. Farber

6    and Ms. Van Ness will probably do the appeal.

7          THE COURT:  Well, who's his counsel on the appeal?

8          MS. SHARKEY:  I'm part of the counsel on his appeal

9    but we don't need three lawyers on it we don't think.

10          THE COURT:  Well, that's not what concerns me.  Are

11    you sufficiently related to the case so that you can make the

12    motion on his behalf?

13          MS. SHARKEY:  Absolutely.

14          THE COURT:  Okay.

15          MS. SHARKEY:  At any rate, Your Honor, in order

16    to -- one of the reasons that Mr. Carneglia conceded to this

17    disclosure of 3500 was so we could receive it, quite frankly,

18    and the Court had indicated -- we argued this point early on

19    prior to receiving it that he needed it in the facility, the

20    record is replete with our arguments as to how Carneglia was

21    frustrated in his review and, again, I'm not going to burden

22    you with that for a second or third time but we don't believe

23    that Mr. Carneglia had an adequate opportunity to review the

24    3500 and Mr. Carneglia has specifically requested that he

25    receive a copy of the 3500 so he could review it.

1    I would note that the impediments within the BOP,

2    according to Mr. Carneglia and as indicated in the 33 and the

3    29 motions, prohibited him from reviewing all of it.  The case

4    is now complete at the trial stage.  He would like to have a

5    meaningful opportunity to review the 3500 in a thoughtful way

6    in order to aid the direct appeal and we're asking that it be

7    provided to him without the restrictions that the government

8    seeks in its letter of November 2nd, 2009.

9          MR. NORRIS:  Your Honor, given the recent completion

10   of the record which has now been sent to the Second Circuit,

11   frankly, I'm not certain as to whether the Court does have

12   jurisdiction to hear this request and it is something we could

13   look at but on the merits, in early December of 2008, about

14   six weeks before trial, we started producing 3500 material

15   with the understanding from counsel that we would work out a

16   stipulation so that the defendant couldn't actually bring the

17   3500 into his jail cell for reasons of the integrity of

18   ongoing investigations, among other reasons.  Counsel agreed.

19   Within about two weeks, as we had been providing 3500 --

20         THE COURT:  Are those investigations still

21   continuing?

22         MR. NORRIS:  They are, Your Honor.

23         THE COURT:  Relying on some of the information --

24         MR. NORRIS:  Absolutely, Your Honor.

25         THE COURT:  -- in the 3500?

1    MR. NORRIS:  Yes.  Yes, Your Honor.  Within

2  approximately two weeks we worked out a stipulation with

3  counsel that makes very clear the defendant couldn't bring the

4  3500 into his jail cell or possess it in the facility.  At the

5  time I recall the defendant not having enough access to it in

6  the library at the MDC.  We made an application to the court.

7  The court made arrangements that the defendant could look at

8  the 3500 here in the courthouse.

9    We have no objection to the defendant having access

10  to a copy of the 3500 in the MDC in the library while he's

11  still at the MDC before he's designated, we'd have no

12  objection to him coming to the courthouse to look at it as he

13  did before trial and certainly, to the extent he's designated

14  subsequently, we'd have no objection to working out with his

15  permanent facility, you know, the ability to look at the 3500

16  at a library.

17    THE COURT:  What's the problem with his looking at

18  it in his jail cell?

19    MR. NORRIS:  The same reasons that raised the need

20  for the stipulation initially, there is very sensitive

21  information about ongoing criminal investigations in that

22  3500.  In La Cosa Nostra cases certainly there's extensive

23  practice of sharing 3500 material between associates and

24  members of a crime family and of multiple crime families even

25  right now and certainly during the trial, the defendant's

trial in this case, there was testimony about other associates
of the defendant having access to 302s out on street.  This is
something that's been widely discussed.

THE COURT:  Yes, there was such testimony, it was
striking.

MS. SHARKEY:  But not from us.

MR. NORRIS:  Even right now I would say there are
three defendants -- for example, there are three defendants in
a separate case pending before Judge Johnson, all associates,
all were fairly close to the defendant who are in the MDC
right now, just to take that as an example, those are three
defendants who are pretrial that haven't received their 3500
and don't have access to this information.  We'd certainly
have a certain --

THE COURT:  So, you have no objection to his
reading it, no objection to his taking notes?

MR. NORRIS:  If I could have a moment, Your Honor?

(Pause while counsel for the government confer.)

MR. NORRIS:  We certainly have no objection to him
reading it in the library, for example, at the facility.
Taking notes does raise a concern.

THE COURT:  Well, what would happen to the
documents?  Who would have them, the librarian, and give it to
him?  How would it work?

MR. NORRIS:  I believe the way we've done it in the

1    past is the staff attorney's office at the facility has it and

2    then makes it available in the library for specified times and

3    we've worked that out with them in the past.  Sometimes it has

4    worked.  Sometimes, as in this case, it didn't result in him

5    having enough time to review it but given --

6              THE COURT:  He'll have a lot of time now because it

7    will take the Court of Appeals more than a year to get to the

8    case.

9              MS. SHARKEY:  Your Honor, I would note that any

10   accommodations that we tried to work out with the Bureau of

11   Prisons with Mr. Carneglia's review had been frustrated at the

12   trial level but also the idea that --

13             THE COURT:  Frustrated how?

14             MS. SHARKEY:  That Carneglia could only -- had to be

15   in cuffs when he reviewed the 3500, you heard all this before,

16   I don't want to belabor it but I'll go over it again.

17   Carneglia had to be in cuffs when he was reviewing the 3500

18   material in court.  Carneglia was constantly closed out of

19   meeting with a paralegal or defense team member at the MDC

20   because of the other 60 defendants who may have had a visit at

21   the moment and he didn't have enough opportunity to look at

22   the material prior to the witnesses testifying.

23             I just want to note that, two things, frequently the

24   best intentions when it comes to the Bureau of Prisons, for

25   structural reasons or whatever reasons, are frustrated on a

1    realistic level.  Mr. Carneglia has been sentenced to life.

2    His review of this material and being able to take some notes

3    on it in order to have meaningful conversations with

4    counsel --

5              THE COURT:  I don't understand what difference it

6    makes on an appeal where you have a record.  I could

7    understand why it might make a difference in a 2255 but you're

8    going to be working from a record on your appeal.  What advice

9    is he going to give you on the 3500 material?  I just don't

10   see it.

11             MS. SHARKEY:  Well, Judge, perhaps it would be in

12   support of his Rule 33 motion.

13             THE COURT:  That's been decided.

14             MS. SHARKEY:  That's been decided at the trial

15   level.

16             THE COURT:  Yes.

17             MS. SHARKEY:  I would imagine it may be raised on

18   appeal, the fact that he had not been able to have time to

19   review.

20             THE COURT:  But that's a situation that's fixed and

21   frozen and what happened subsequently on his review will not

22   affect that.  Either it affected his trial rights or didn't.

23   This is post-trial.  You have an appeal pending.  You have

24   told me and your client has told me that because of his poor

25   education and background he doesn't read well.  That's not my

impression. My impression of him is that he's a very adroit, clever person and that none of what we're now dealing with has any bearing on what counsel will do on the appeal.

MS. SHARKEY: Judge --

THE COURT: In most cases counsel doesn't even consult except to send him a brief.

MS. SHARKEY: I think, Your Honor, it would be relevant for Carneglia to be able to say had I known X, Y, Z or had I had the opportunity to read X, Y, Z in the record, it would have been relevant for particular points that were raised at trial. For instance, there was a number of cooperators who testified during the course of the trial. Carneglia contends that he had not -- he didn't have the opportunity to review their 3500 material and discuss with counsel prior to their hitting the witness stand or saw testimony of one witness long after they testified and, therefore, certain points that were rejected by the court, perhaps the scope of co-conspirator hearsay information.

THE COURT: I don't ever remember anything -- it all seems to me quite theoretical -- of that nature.

MS. SHARKEY: Judge, with all due respect, Judge, I tend to disagree. I think the reasons are laid out in the Rule 29 and the Rule 33 at length. If the court is going to deny the motion, I would request that you not impose the restriction that he can't take notes on this information.

1          THE COURT:  Well, that wasn't the restriction

2   earlier.  Did he take notes?

3          MS. SHARKEY:  Most of the time not.  He was cuffed

4   when he was here.

5          THE COURT:  Well, you can write when you're cuffed.

6          MS. SHARKEY:  Judge, we saw him through a screen and

7   he was cuffed on the other side and every time he tried to

8   look at one of the documents, we had to go out, hand it to the

9   marshal and it was brought around back and he couldn't write

10  when he was in cuffs, frankly, and he would only have one or

11  two documents at a time.

12         THE COURT:  I don't believe that, and he was in oral

13  communication in any event.

14         MS. SHARKEY:  Well, the massive amount of 3500

15  material, tens of thousands of pages, not to allow the

16  defendant to take notes on relevant aspects in order to --

17         THE COURT:  I did not so provide at the trial.

18         MS. SHARKEY:  Okay.  I'm sorry.

19         THE COURT:  I did not so provide at the trial.

20         MS. SHARKEY:  Right, and I would request that you

21  not impose any such restriction during the appeal period.

22         THE COURT:  All right.  I'm not going to impose any

23  further restrictions but the same restrictions will apply.

24  He's a member of this mob, that's fairly clear, he remained a

25  member, the jury in effect so found and I find for purposes of

1  this motion.

2       So, what does the government want me to rule?

3       MR. NORRIS:  The government would ask that the court

4  simply deny the motion.  The motion, as I understand it, is

5  simply to allow the defendant to look at 3500 in his jail

6  cell.

7       THE COURT:  But he'll be permitted to look at it in

8  the library under the kind of supervision that will remove the

9  papers and present them when he's there, right?

10      MR. NORRIS:  We certainly have no objection to that

11  and we'll work with the MDC -- this is the first we've heard

12  of it, counsel never asked us before, but certainly we'll work

13  with the MDC.

14      THE COURT:  Well, that was the arrangement earlier,

15  wasn't it?

16      MS. SHARKEY:  No, defense team members brought -- it

17  wasn't parked in the library because he could never get access

18  to it.  We had investigators and paralegals --

19      THE COURT:  He came here --

20      MS. SHARKEY:  He came here.

21      THE COURT:  -- to the courthouse.  I don't want him

22  in the courthouse because it will burden our marshals.

23      MS. SHARKEY:  We're not asking for it, that's

24  unworkable.

25      MR. NORRIS:  I would note the stipulation that we

had, we also put this in our letter, the stipulation also

provides at the close of trial counsel return all of the 3500

to the government with a log, a recording of how many copies

they made.  After the trial counsel asked if they could keep a

copy for purposes of the appeal and we agreed.  I want to make

that clear, there's been no provision up until now for the

defendant to have a copy at all and there was a provision for

counsel to have one copy based on our oral agreement.

THE COURT:  Is counsel for the defendant now

certifying to this court that it would assist in counsel's

appeal if the defendant were permitted to peruse these

documents in the library or other facility provided by the

jail?

MS. SHARKEY:  Yes.

THE COURT:  And return the documents after he's

perused them.

MS. SHARKEY:  Yes.

THE COURT:  Okay.  You've stipulated or you haven't

stipulated but you certified to that and I'll take your

certification and exercise residual discretion to assist the

appellate court --

MS. SHARKEY:  Thank you, Judge.

THE COURT:  -- to issue the order now sought.  Agree

on the terms and I'll sign the order.

MS. SHARKEY:  Okay.  Thank you, Your Honor.

1          MR. NORRIS:  Thank you, Judge.

2          THE COURT:  Thank you.

3          All right.  Mr. Carneglia, have a nice day.

4   Good-bye.

5          THE DEFENDANT:  Okay.

6          (Time noted:  11:33 a.m.)

7          (End of proceedings.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25